J-S23006-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OBADIAH WHACK | : | |
| | : | |
| Appellant | : | No. 2370 EDA 2025 |

Appeal from the Judgment of Sentence Entered April 17, 2025
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0004217-2023

BEFORE:   LAZARUS, P.J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                **FILED AUGUST 14, 2026**

Obadiah Whack appeals from the judgment of sentence, entered in the Court of Common Pleas of Lehigh County, following his entry of a guilty plea to one count each of third-degree murder[1] and possession of a firearm prohibited.[2]  Whack's counsel, Jeffrey G. Velander, Esquire, has filed an application to withdraw as counsel and an accompanying **_Anders_**[3] brief.  Upon review, we affirm Whack's judgment of sentence and grant Attorney Velander's application to withdraw.

_____

[*] Retired Senior Judge assigned to the Superior Court

[1] 18 Pa.C.S.A. § 2502(c).

[2] **_Id._** at § 6105(a)(1).

[3] **_Anders v. California_**, 386 U.S. 738 (1967); **_Commonwealth v. McClendon_**, 434 A.2d 1185 (Pa. 1981); **_Commonwealth v. Santiago_**, 978 A.2d 349 (Pa. 2009).

The trial court summarized the factual record as follows:

At approximately 2:00 a.m. on September 29, 2023, Allentown police officers responded to 628 N[.] Law Street in Allentown for a report of a shooting. Upon arrival, officers discovered a female victim, identified as Giselle "Gigi" Trabal, suffering from a gunshot wound to the chest. Gigi was transported to the hospital, but succumbed to her injuries. The cause of death was later ruled to be homicide.

Witnesses advised police that prior to the shooting, [Whack] was inside the apartment with five other individuals, including Gigi. [Whack] got into a verbal confrontation with people in the apartment and was ultimately kicked out. Video surveillance in the areas shows [Whack] and two associates walking away from 628 N[.] Law Street, and [Whack] can be heard stating, "I'm going to get it right now. " [Whack] and his associates are seen walking back towards 628 N[.] Law Street. [Whack] bangs on the door of 628 N[.] Law Street, and yells, "Open the door or I'll shoot it down." Soon thereafter, [Whack] fire[d] a shot through the closed door of the apartment. Inside the apartment, witnesses saw Gigi fall to the ground and blood coming from her chest area. Almost immediately after the gunshot is heard on the video, [Whack's] two associates are seen walking away from the address, with [Whack] running behind a few seconds later.

Using additional surveillance video and information gathered from witnesses, police converged on an apartment complex located at 315 N[.] 4th Street. Police observed a male—later identified as [Whack]—exit apartment 11. Officers identified themselves, and [Whack] immediately reentered the apartment. A few moments later, police observed [Whack] attempting to exit through a window in the back of the building. Again, the officers identified themselves, and [Whack] retreated back into the apartment. Shortly thereafter[,] [Whack] was pushed out of the front door of apartment 11, and a handgun and a grocery bag containing another handgun were tossed out with him. [Whack] was taken into custody. Subsequent testing showed one of the guns fired the bullet that killed Gigi.

On April 14, 2025, a jury trial commenced in this matter. On the morning of April 17, 2025, prior to closing arguments, [the trial judge] was advised that the parties had reached an agreement.

Thereafter, [Whack] pleaded guilty [to the above-named offenses] and was immediately sentenced.

On April 24, 2025, [Whack] filed a Motion to Withdraw Guilty Plea stating he was forced to enter a plea in order to avoid a life sentence because [the trial court] erroneously ruled that [it] would read the first-degree jury instruction. On August 13, 2025, [the trial court] denied [Whack's] motion.

Trial Court Opinion, 11/21/25, at 1-2.

On September 9, 2025, Whack filed a timely notice of appeal[4] followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On October 27, 2025, the trial court granted trial counsel's motion for leave to withdraw as counsel and appointed the Lehigh County Public Defender's Office to represent Whack on appeal. Attorney Velander subsequently filed, in this Court, a motion for leave to withdraw and an **Anders** brief on behalf of Whack after determining that the issues he raises on appeal are frivolous. Whack did not file a *pro se* brief, nor did he retain private counsel.

When counsel seeks leave to withdraw from representation on appeal, this Court must first determine if counsel complied with the dictates of **Anders** and **Santiago**. **See Commonwealth v. Bennett**,

---

[4] Whack's notices of appeal improperly purports that he is appealing from the August 13, 2025 order denying his post sentence motion. However, his appeal properly lies from the April 17, 2025 judgment of sentence made final by the trial court's denial of his post sentence motion. **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (en banc) (in criminal action, appeal properly lies from judgment of sentence "**made final by the denial of post-sentence motions**.") (emphasis added).

- 3 -

124 A.3d 327, 333 (Pa. Super. 2015). If counsel met these requirements, we address the issues raised in the **Anders** brief independently examine the record as to those issues. **See id.** If we determine those issues to be without merit, we may "grant counsel's request to withdraw and dismiss the appeal[.]" **See Anders**, **supra** at 744. In doing so, "[this] Court is limited to examining only those issues raised and developed in the brief[; w]e do not act as, and are forbidden from acting as, appellant's counsel." **See Bennett**, **supra** at 333.

Pursuant to **Anders**, when counsel believes that an appeal is frivolous and wishes to withdraw from representation, he must:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous[;] (2) file a brief referring to any issues in the record of arguable merit[;] and (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel or to raise any additional points that he deems worthy of the court's attention. The determination of whether the appeal is wholly frivolous remains with the court.

**Commonwealth v. Burwell**, 42 A.3d 1077, 1083 (Pa. Super. 2012) (citation omitted).

Additionally, the Pennsylvania Supreme Court has explained that a proper **Anders** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling

case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

After determining that counsel has satisfied the technical requirements of *Anders* and *Santiago*, this Court must then "conduct a simple review of the record to ascertain if there appears on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (en banc).

Instantly, our review of counsel's *Anders* brief and application to withdraw reveals that counsel has complied with the technical components required under *Santiago*. Counsel filed a motion for leave to withdraw after making thorough review of the record and furnished Whack with a copy of such motion. Additionally, Counsel filed a brief outlining the issues and furnished Whack with a copy, informing him of his right to retain new counsel or proceed pro se. Because Attorney Velander complied with the requirements, this Court will proceed to review the *Anders* brief and determine whether the issues raised in the brief are in fact frivolous.

The *Anders* brief filed by Attorney Velander outlines the following questions for our review:

(1) Whether the trial court abused its discretion [] by denying [Whack's] Motion to Withdraw Guilty Plea to the charge of third degree murder, which was filed following a three-day trial and sentencing, alleging that he entered the guilty plea involuntarily after the testimony had concluded based upon what [Whack] considered an erroneous decision by the trial

- 5 -

court to include a charge for first degree murder in its instructions to the jury.

(2)     May appointed counsel be permitted to withdraw after conscientious review of the issues and the facts pursuant to the ***Anders*** case?

Anders Brief, 2/13/26, at 5-6 (unnecessary capitalization omitted).

Whack argues that he was improperly coerced to accept plea to third-degree murder because after the trial court erroneously decided to give the jury a first-degree murder instruction and he wanted to avoid life in prison. ***See Anders*** Brief, at 15.  He is entitled to no relief.

The standard of review for withdrawing a plea after sentencing falls within the sound discretion of the trial court and is as follows:

> When a defendant seeks to withdraw a plea after sentencing, he must demonstrate prejudice on the order of manifest injustice. [A] defendant may withdraw his guilty plea after sentencing only where necessary to correct manifest injustice.
>
> * * *
>
> Manifest injustice occurs when the plea is not tendered knowingly, intelligently, voluntarily, and understandingly.  In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea.  Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise.

***Commonwealth v. Jabbie***, 200 A.3d 500, 505 (Pa. Super. 2018) (citations omitted).

> "Under [Pa.R.Crim. P. 590], the court should confirm, inter alia, that a defendant understands:  (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) he is giving up his right to trial by jury; (4) and the presumption of innocence; (5) he is aware of the permissible ranges of

sentences and fines possible; and (6) the court is not bound by the terms of the agreement unless the court accepts the plea." **Commonwealth v. Kpou**, 153 A.3d 1020, 1023 (Pa. Super. 2016) (citations omitted).

Furthermore, a defendant "is bound by [the defendant]'s statements made during a plea colloquy, and may not successfully assert claims that contradict such statements." **Commonwealth v. Muhammad**, 794 A.2d 378, 384 (Pa. Super. 2002) (citations omitted).

Here, Whack is unable to demonstrate manifest injustice occurred when he pled guilty. The record demonstrates that the trial court ensured Whack all factors. **See** Pa.R.Crim.P. 590. Specifically, the trial court laid out the nature of the charges to which Whack was pleading guilty and counsel for the Commonwealth set forth the specific factual basis for the plea, which Whack acknowledged.[5] **See** N.T. Trial, 4/17/25, at 18-30. Moreover, Whack answered affirmatively that he understood the presumption of innocence and that he was giving up his right to a jury trial. **See id.** at 13, 16. The court advised Whack of the permissible range of sentencing for the two offenses to which was pleading guilty. **See id.** at 10 (trial court noting range of 20 to 40 years for third degree murder and 10 to 20 years for firearms offense). Finally, the Commonwealth noted that the plea must be accepted by the trial court. **See id.** at 5.

_____

[5] Additionally, the plea deal took place at the end of the presentation of evidence, thus Whack was present for the entire trial and was aware of the evidence against him.

- 7 -

Whack is bound by his statements made during the plea colloquy in which he affirmed that he was entering the plea voluntarily and knowingly, and not as a result of coercion. **See Muhammad**, **supra**; **see also** N.T. Trial, 4/17/25, at 30-31 ("Q: . . . [H]as anybody promised you anything, in order to get you – A: No. Q: To plead guilty today? Has anybody used any force or threatened you? A: No. Q: In order to get you to plead guilty today? A: No. Q: Are you doing this of your own free will? A: Yes."). As such, and in light of the foregoing, Whack's claim that he was coerced into accepting a plea is without merit. **See Jabbie**, **supra**.

Next, Whack argues that he was improperly coerced to take the plea deal because the trial court read a first-degree murder jury instruction and he wanted to avoid life in prison. **See Anders** Brief, 2/13/2026, at 19-20. Whack further contends that the judge's choice of words during trial indicates the first-degree murder jury instruction was improper. **See Anders** Brief, 2/13/2026, at 20; N.T. Trial, 4/17/25, at 43 ("I don't think the evidence indicates you intended to kill someone necessarily, but I think third-degree murder was the appropriate agreement in this case.").

"In examining jury instructions, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case." **Von Der Heide v. Commonwealth DOT**, 718 A.2d 286, 288 (Pa. 1998). "A charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there

was an omission from the charge amounting to a fundamental error." **Commonwealth v. Chambers**, 980 A2d 35, 50 (Pa. 2009) (citations omitted).

This Court has previously established that specific intent sufficient for a first-degree murder exists where a defendant had fired a gun through a door, did not see the victim when he fired the gun but knew people were standing behind the door, and ended up striking the victim with a bullet to the abdomen. **Commonwealth v. Cannavo**, 199 A.3d 1282, 1292 (Pa. Super. 2018). Under such circumstances, this Court found that because the defendant had "fired the bullet toward a vital part of the victim's body, [it] was sufficient for the jury to infer a specific intent to kill." **See id.** Indeed, in **Cannavo**, this Court upheld the defendant's first-degree murder conviction where the defendant fired a gun through an occupied carriage house door, aiming for the victim's abdominal area. **See Cannavo**, **supra**.

Similarly, in this case, Whack fired through the door of a small, crowded apartment at abdomen level after having recently left the apartment, thus aware he was likely to injure someone. **See** N.T. Trial, 4/17/25, at 28-29. As such, the trial court did not abuse its discretion or commit an error of law when it decided to grant a first-degree murder jury instruction. **See Von Der Heide**, **supra**; **Chambers**, **supra**. Additionally, regardless of the trial judge's comments regarding Whack's intent, Whack cannot withdraw his statements during the colloquy where he indicated he had not been coerced in any

manner.  **See Muhammad**, **supra**.  Accordingly, Whacks' claim that he was improperly coerced by the first-degree murder jury instruction is meritless.

We review the merits of Whack's claim as part of our independent review of the record.  **See Dempster**, **supra**.  Based on that review, we perceive that the trial court properly addressed the claim and reviewed all necessary materials.  Thus, we conclude that Whack's claim is meritless.

Judgment of sentence affirmed.  Application to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  8/14/2026